```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
UNITED STATES OF AMERICA              :
                                      :
         - v -                        :
                                      :         16 CR 404 (AKH)
FUYI SUN,                             :
         Defendant.                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
```

## SENTENCING MEMORANDUM
## ON BEHALF OF FUYI SUN

DAVID PATTON, ESQ.
Federal Defenders of New York
Attorney for Defendant
**Fuyi Sun**
52 Duane Street, 10th Floor
New York, NY 10007
Tel.: (212) 417-8728
**Amy Gallicchio**, Esq.
**Sabrina Shroff**, Esq.
Of Counsel

TO:    Joon H. Kim, ESQ.
       Acting United States Attorney
       Southern District of New York
       1 St. Andrew's Plaza
       New York, NY 10007

Attn:  Matthew Podolsky, Esq.
       Assistant United States Attorney

**Federal Defenders OF NEW YORK, INC.**

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

Southern District of New York
Jennifer L. Brown
*Attorney-in-Charge*

July 12, 2017

**BY ECF AND HAND DELIVERY**

Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    **United States v. Fuyi Sun**
               **16 Cr. 404 (AKH)**

Dear Judge Hellerstein:

     Mr. Sun is a 53-year-old man with no criminal record who, prior to his arrest, lived a simple and solitary life in Shanghai, China. Diagnosed with [REDACTED] [REDACTED]. He came to the United States for the first time at his older brother's prompting in order to purchase carbon fiber without the proper export license. Two days after his arrival, he was arrested. Mr. Sun admitted his guilt pursuant to a plea agreement, to violating the International Emergency Economic Powers Act (IEEPA), in violation of Title 50, United States Code, Section 1702 and 1705, and is to be sentenced on July 26, 2017. At that time, he will have been in custody for 15 months. His incarceration thus far has been harsh, not only because he is continents away from his family but also because the drastic change in medication and treatment has caused his mental health to deteriorate. For these and other reasons set forth below, we ask for a sentence of time served. Such a sentence, under all of the circumstances, is "sufficient but not greater than necessary" to serve the purposes of sentencing as set out in 18 U.S.C. § 3553(A)(2).

## BACKGROUND

     Mr. Sun did not have a happy childhood. Until he was 10 years old he was raised by his maternal aunts who largely ignored him and showed him little affection. His parents felt terrible but had to leave their children in the care of the aunts so that his father, who was a teacher, could work in another part of China. Mr. Sun's memories of his childhood are those of an emotionally and verbally abusive home. Fearful of his aunts, he never felt safe in their home. When he was 10 years old, Mr. Sun was reunited with his parents as his father found a job in their home town.

The Honorable Alvin K. Hellerstein                                     July 12, 2017
United States v. Fuyi Sun
16 CR. 404 (AKH)

Mr. Sun was much happier with his parents despite the fact that his father was a strict disciplinarian who used corporal punishment to discipline the children.

Mr. Sun attended college in Shanghai, China, and received a bachelor's degree in mechanical engineering, and continued to post-graduate courses. T█████████████████
████████████████████████████.



Despite his struggles, Mr. Sun has always worked. In 1991 he got a job at a mechanical factory in Shanghai that produced machinery used to make steel frames for windows. █████
████████████████████████ He received unemployment disability compensation and permanent housing.

Mr. Sun's entire family lives in China.  His mother and father are now 75 and 83 years old, respectively. His father's physical and mental health have deteriorated greatly in recent years.  Mr. Sun worries constantly about his parents.  As he writes in his letter to the Court, "My father and mother raised me through hardship.  Now that they are elderly, I hope I can always be by their side to talk to them, to buy daily supplies for them, and to let them live happily throughout the last few years of their life."  *See* Fuyi Sun letter, attached as Exhibit B.  Mr. Sun has two older brothers who still live in China.



The Honorable Alvin K. Hellerstein  July 12, 2017
<u>United States v. Fuyi Sun</u>
16 CR. 404 (AKH)



**THE APPROPRIATE SENTENCE**

For Mr. Sun's conduct, 15 months' incarceration is punishment enough particularly in light of his ███ and his distance from family and country. Although the guidelines recommend imprisoning him for a period of 46 to 57 months, such a result is extreme and unnecessary. While the Court must calculate the applicable Sentencing Guidelines range, "[t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable." <u>Nelson v. United States</u>, 555 U.S. 350, 352 (2009).

The overarching command of Section 3553(a) is that sentences should be sufficient, but not greater than necessary" to achieve the basic goals of retribution, deterrence and rehabilitation. 18 U.S.C. § 3353(a)(2). Here especially, the § 3353(a) factors must be carefully considered when imposing sentence.

    A. NATURE AND CIRCUMSTANCES OF THE OFFENSE AND HISTORY AND CHARACTERISTICS OF MR. SUN.

Mr. Sun is not a sophisticated businessman. His involvement in the offense was largely orchestrated by his older brother. And while Mr. Sun's participation was voluntary, ███ ███. It was easy to take advantage of Mr. Sun. His brother called the shots and Mr. Sun did his bidding. Mr. Sun's brother promised to give him money for his participation and trip to the United States. ███



Efforts by Mr. Sun's brother's company to buy carbon fiber from the undercover company began in 2011. The brother's company insisted that the undercover company apply for an export license. When those efforts failed, communication ended until 2013 when the brother's company initiated the efforts again. The communication in 2013 lasted for only two months and

The Honorable Alvin K. Hellerstein                                     July 12, 2017
United States v. Fuyi Sun
16 CR. 404 (AKH)

ended when Mr. Sun's brother became suspicious that he was dealing with undercover agents. Two years later, in 2015, communication once again resumed, this time resulting in Mr. Sun travelling to the United States. Mr. Sun arrived with $30,000 to purchase approximately 25 pounds of carbon fiber.

The type of carbon fiber that Mr. Sun was attempting to export to China is controlled by the United States because of its dual use that includes the potential use for military purposes. The presentence report (PSR) reflects that in conversations with the undercover agents, Mr. Sun suggested that he had a relationship with the Chinese military and, on occasion, suggested that the military might be an end-user of the carbon fiber. However, Mr. Sun also repeatedly related that the carbon fiber was only intended for commercial use and the civilian market. Mr. Sun's conversations with undercover agents provides ambiguous evidence at best regarding the potential end-users of the carbon fiber and, his representations with respect to the military, were often untrue. For example, he reportedly told the undercover agents that he previously worked for the China National Space Administration, a fact that is false. Nor has Mr. Sun ever served in the Chinese military. Mr. Sun's actions did not present a specific threat to the security interest of the United States. Furthermore, Mr. Sun is accused of attempting to export merely 25 pounds of carbon fiber. Finally the purchase of carbon fiber here appears to be on a disorganized and unsophisticated level.

Mr. Sun has lived a law abiding life for 53 years. His involvement in this offense is aberrant and does not reveal a criminal instinct. The risk of recidivism is next to zero. His suffering while incarcerated has provided sufficient deterrence to future illegal behavior.

Mr. Sun is a man of humble means who lives a simple life.

B.  DETERRENCE AND SENTENCE PARITY

The Court must determine what sentence is sufficient but not greater than necessary to generally deter others in the community. Fifteen months of incarceration in a prison far away from elderly parents and needed medical care is sufficient to achieve this difficult goal of general and specific deterrence. Anything more is unnecessary and ineffective.

In imposing sentence, the Court must attempt to preserve sentence parity between similarly situated defendants. According to The United States Sentencing Commission, 2008 through 2012 Datafiles, in cases involving national defense, the average length of sentence for a subsection of those cases involving evasion of export controls was 22 months. *See* Quick Facts Publication, attached as Exhibit C. The Commission found that for the five-year period of 2008 to 2012, less than half of all national defense offenders were sentenced within the guideline range and non-government sponsored below range sentences were applied in one-third (33.2%) of the cases. *Id.*

4

The Honorable Alvin K. Hellerstein                                                                               July 12, 2017
United States v. Fuyi Sun
16 CR. 404 (AKH)

Two examples of non-government sponsored below guideline sentences are the following: On March 29, 2013, in the Eastern District of New York, Judge Garaufis sentenced a citizen of Taiwan, Yen Lin Chen, to time served—a period of 9 months—for violating the IEEPA by attempting to export 5 to 10 tons of weapons-grade carbon fiber from the United States to Taiwan. Ms. Chen was arrested after travelling to the United Stated to meet with an undercover agent to purchase the carbon fiber. United States v. Yen Ling Chen, 12 CR 563 (NGG), Judgment, ECF No. 39 and Indictment, ECF No. 27.

In another case, on November 26, 2013, in the Southern District of New York, Judge Ramos sentenced a United States citizen, Peter Gromacki, to 3 months' imprisonment and 3 years of supervised release following his guilty plea to violating the IEEPA by using his New York company to illegally export carbon fiber to China. He had arranged for the illegal export of more than 6,000 pounds of weapons-grade carbon fiber to China via Belgium, and made a variety of false statements on shipping declaration forms. United States v. Peter Gromacki, 12 CR 302 (ER), Indictment, ECF No. 1.

C. RESPECT FOR THE LAW AND PUNISHMENT

Mr. Sun has already paid a hefty price and suffered greatly because of his actions. He is 7,000 thousand miles away from his family and his home. His time in prison will be a lonely one; he has no family here and, once designated, he will not have a single visitor as his counsel will be too far from him. With limited money in his commissary, he is not able to speak with his loved ones on a monthly, let alone more frequent basis. In fact, since his arrest 15 months ago, he has only spoken to his mother three times. Nor can he fill the social void by interacting with others in the jail. Mr. Sun does not speak even rudimentary English and his mental health issues leave him very ostracized. Incarceration has been and will continue to be extremely isolating.

Following the completion of his sentence, he will undoubtedly be held in jail longer in an immigration facility awaiting deportation. The new administration is taking longer to deport individuals and the wait for Mr. Sun could be up to three full months. Additionally, the conditions of confinement in ICE detention facilities are far worse and it is very unlikely he will get proper medication while held there. For Mr. Sun and his offense, 15 months in jail in the United States are sufficient to meet the overarching command of Section 3553(a).

D. INADEQUATE MEDICAL CARE IN THE BUREAU OF PRISONS

[redacted] Should the Court impose a sentence greater than time served, it is unlikely that Mr. Sun will receive any therapy at all. Based both on the Department of Justice's own research and anecdotal evidence from other clients, it is clear that only a minority of those in need of mental health treatment in the Bureau of Prisons system

5

The Honorable Alvin K. Hellerstein                              July 12, 2017
<u>United States v. Fuyi Sun</u>
16 CR. 404 (AKH)

actually receive treatment.  Matters are made much worse when the service provider needs to be fluent in Mandarin.

     As an initial matter, the Bureau of Prisons facilities are severely overcrowded.  As of March 2013, the BOP was operating at between 37 and 54 percent over its rated capacity. *See Dep't of Justice Federal Prison System Fiscal Year 2014 Congressional Budget*, at p. 2 ("The size of the BOP inmate population exceeds the rated capacity of its prisons by 37 – 54 percent on average, depending on the security level."), available at https://www.justice.gov/sites/default/files/jmd/legacy/2014/06/23/bop-bf-justification.pdf[1] The Department of Justice has stated that overcrowding in federal prisons has created "unprecedented challenges" for the BOP. *See Dep't of Justice Federal Prison System Fiscal Year 2014 Congressional Budget*, at p. 1, available at https://www.justice.gov/sites/default/files/jmd/legacy/2014/06/23/bop-bf-justification.pdf

     Secondly, the BOP's health service units are grossly understaffed. In March 2016, the Department of Justice's Office of the Inspector General released a comprehensive review of BOP's "medical staffing challenges," describing the situation in at least some facilities as a "crisis." *See Review of the Federal Bureau of Prisons' Medical Staffing Challenges,* at p. i (March 2016), available *at https://oig.justice.gov/reports/2016/e1602.pdf*. As explained in the report "[a]s of September 2014, the BOP had 3,871 positions in its institutions' health services units to provide medical care to 171,868 inmates. Of those 3,871 positions, only 3,215 (83%) were filled." *Id.*

     Finally, the Office of the Inspector General released a report this month (July 2017) following its review of the BOP's use of restrictive housing units (RHU) for inmates with mental illness.  *See Office of the Inspector General, Review of the Federal Bureau of Prison's Use of Restrictive Housing for Inmates with Mental Illness*, available at *<https://oig.justice.gov/reports/2017/e1705.pdf>*.  The report concluded, among other things, that the "BOP policies do not adequately address the confinement of inmates with mental illness in RHUs, and the BOP does not sufficiently track or monitor such inmates," and that "mental health staff do not always document inmates' mental disorders, leaving the BOP unable to accurately determine the number of inmates with mental illness and ensure that it is providing appropriate care to them."  *Id*. p. i-ii.

     For someone with Mr. Sun's background, the necessity of providing effective, comprehensive mental health care is clear and critical.  It is a near certainty that he will not receive the type of treatment he desperately needs while incarcerated.  As a result, any period of incarceration will be much harsher and more debilitating for Mr. Sun than it is for other inmates.

---

[1] Rated capacity is "the maximum population level at which an institution can make available basic necessities, essential services (e.g., medical care), and programs (e.g., drug treatment, basic education, and vocational education.)" See U.S. Government Accountability Office, Bureau of Prisons: Growing Inmate Crowding Negatively Affects Inmates, Staff, and Infrastructure, at p. 2 n.5 (Sept. 2012), available at: http://www.gao.gov/assets/650/648123.pdf.

The Honorable Alvin K. Hellerstein	July 12, 2017
<u>United States v. Fuyi Sun</u>
16 CR. 404 (AKH)

## CONCLUSION

For all the above stated reasons the Court should impose a sentence of time served.

                                              Respectfully submitted,

                                              /s/
                                          _____

                                          Amy Gallicchio
                                          Sabrina Shroff
                                          Assistant Federal Defenders
                                          Federal Defenders of New York
                                          (212) 417-8728/ 8713

Cc:     AUSA Matthew Podolsky