

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 21, 2017

**BY ECF**

The Honorable Alvin K. Hellerstein
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States* v. *Fuyi Sun*, 16 Cr. 404 (AKH)

Dear Judge Hellerstein:

      The defendant in this case, Fuyi Sun, is scheduled to be sentenced on July 26, 2017, having pleaded guilty to attempting to export and cause to be exported from the United States to China Toray type M60JB-3000-50B carbon fiber ("M60 Carbon Fiber"), without having first obtained the required licenses from the United States Department of Commerce, in violation of the International Emergency Economic Powers Act ("IEEPA"), Title 50, United States Code, Sections 1702 and 1705. Under the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G."), the applicable sentencing range is 46 to 57 months' imprisonment. For the reasons set forth below, the Government respectfully submits that a sentence within the Guidelines range would be fair and appropriate in this case.

## I.    BACKGROUND

### A.    Offense Conduct

      On April 21, 2017, the defendant pleaded guilty to Count of the Indictment, which charged him with attempting to illegally export a particular type of carbon fiber—M60 Carbon Fiber—from the United States to China. (Presentence Investigation Report ("PSR") ¶¶ 2, 6.) Carbon fiber is a product with both military and non-military uses. Carbon fiber composites are ideally suited to applications where strength, stiffness, lower weight, and outstanding fatigue characteristics are critical requirements. These composites also can be used in applications where high temperature, chemical inertness and high damping are important. (PSR ¶ 13.) The two main applications of carbon fiber are in specialized technology, which includes aerospace and nuclear engineering, and in general engineering and transportation, which includes engineering components such as bearings, gears, cams, fan blades and automobile bodies. In addition, certain carbon fiber based composites are used in military aircraft. (PSR ¶ 14.)

Honorable Alvin K. Hellerstein
July 21, 2017
Page 2 of 3

In particular, M60 Carbon Fiber is an extremely high-grade carbon fiber, and is used primarily in aerospace and military applications, including in the manufacture of unmanned aerial vehicles (commonly known as "drones"), among other government defense uses. (PSR ¶ 14.) Accordingly, M60 Carbon Fiber is controlled by the Department of Commerce for nuclear non-proliferation and anti-terrorism reasons, and it is illegal, under IEEPA, to willfully export, conspire to export, or attempt to export from the United States M60 Carbon Fiber without first obtaining a license from the Department of Commerce. (PSR ¶¶ 10-12, 14.)

As set forth more fully in the PSR, over the course of several years, the defendant attempted to purchase various forms of carbon fiber controlled by the Department of Commerce for export from the United States to China, ultimately traveling to the United States in 2016 to purchase M60 Carbon Fiber. (*See* PSR ¶¶ 15-38.) Because the defendant unwittingly contacted an undercover company operated by the United States Department of Homeland Security in an attempt to purchase the carbon fiber, his communication regarding his attempts to purchase carbon fiber were recorded and monitored by United States law enforcement. (PSR ¶¶ 15-16.) During the course of the multi-year negotiations, the defendant repeatedly acknowledged the illegality of his conduct (and suggested using coded language in his communications and other methods to avoid detection), and affirmed that he wished to purchase and export the carbon fiber anyway. (*See* PSR ¶¶ 18-21, 24, 26, 33-34, 36-37.) Ultimately, the defendant came to the United States and paid an undercover agent approximately $25,000 for what he understood to be an initial shipment of M60 Carbon Fiber. (PSR ¶ 36.)

## B.    The Charges and Sentencing Guidelines

As noted above, on April 21, 2017, the defendant appeared before the Court and pleaded guilty, pursuant to a plea agreement, to Count One of the Indictment, which charged him with attempting to export and cause to be exported from the United States to China M60 Carbon Fiber, without having first obtained the required licenses from the United States Department of Commerce, in violation of Title 50, United States Code, Sections 1702 and 1705. Count One carries maximum term of imprisonment of twenty years; a maximum term of supervised release of three years; a maximum fine of $1,000,000; and a mandatory $100 special assessment.

The Plea Agreement between the parties, dated March 31, 2017, calculates the defendant's Criminal History Category as I, and the applicable Guidelines offense level as 23, resulting in a Guidelines sentencing range, as stipulated to by the parties, of 46 to 57 months' imprisonment. In the PSR, dated July 13, 2017, the Probation Department reached the same Guidelines calculation. (PSR ¶ 84.)

## II.    DISCUSSION

The Government submits that a Guidelines sentence is appropriate for this defendant, in light of the offense conduct in this case. The Court is well aware that the Sentencing Guidelines provide strong guidance to sentencing courts following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of

Honorable Alvin K. Hellerstein
July 21, 2017
Page 3 of 3

thousands of individual sentencing decisions," *Gall* v. *United States*, 128 S. Ct. 586, 594 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings.  *Id.* at 596.  After that calculation, however, Your Honor must consider the seven factors outlined in Title 18, United States Code, Section 3553(a), which include the nature and circumstances of the offense, the individual characteristics of the defendant, and the need to adequately deter criminal conduct, protect the public from further crimes of the defendant, and promote respect for the law.  *Id.* at 50 & n.6.

There is no dispute between the parties about the essential facts of this case: the defendant, knowing his conduct was illegal and punishable by imprisonment in the United States, persisted in a lengthy effort to covertly acquire a material used primarily in military applications and to surreptitiously export that material to China without obtaining a necessary export license.  The material is highly sensitive and carefully controlled by the Government—facts clearly known to the defendant.  A sentence within the Guidelines range is necessary to reflect the seriousness of this conduct and to provide just punishment for the offense.

Further, a sentence within the Guidelines range is necessary to accomplish general deterrence.  As is apparent from the facts and circumstances of the case, that exporting certain carbon fiber from the United States without a license is illegal is well known to foreign actors seeking to obtain a source of supply.  It is similarly clear that foreign actors nonetheless attempt to obtain carbon fiber and smuggle it from the United States.  It is therefore critically important that individuals—both in the United States and abroad—understand the gravity of this crime.

## IV.      CONCLUSION

For the foregoing reasons, the Government respectfully submits that the defendant should be sentenced within the Guidelines range of 46 to 57 months' imprisonment.

Respectfully submitted,

JOON H. KIM
Acting United States Attorney

By:  _____
Matthew Podolsky
Patrick Egan
Nicholas Lewin
Assistant United States Attorney
(212) 637-1947/2345/2337

cc:      Amy Gallicchio, Esq. (by ECF)